## SCOTT *et al. v.* PERRY *et al.*[*]

### (Division A. Nov. 23, 1925.)

#### [106 So. 12. No. 25129.]

1. ALTERATION OF INSTRUMENTS. *Interlineations not alterations, unless made after delivery.*

   Erasures or interlineations on face of instrument are not alterations in a legal sense, unless made after delivery of instrument.

2. ALTERATION OF INSTRUMENTS. *Whether change after delivery question for trier of fact.*

   Whether erasures or interlineations were made after delivery of instrument is a question for the trier of fact.

3. ALTERATION OF INSTRUMENTS. *Burden of showing changes after delivery on party claiming it.*

   Except as to negotiable paper, one assailing an instrument for erasures or interlineations has the burden of showing that they were made after its execution.

4. APPEAL AND ERROR. *Chancellor's finding of insufficient evidence to show interlineations were after delivery of deed not manifestly wrong.*

   Chancellor's holding that evidence failed to show that interlineations in deed were made after its execution and delivery *held* not manifestly wrong so as to authorize its disturbance.

---

[*]Headnotes 1. Alteration of Instruments, 2 C. J., Section 91. Presumption as to time of alteration of instrument and its effect on burden of proof, see notes in 39 L. R. A. (N. S.) 100, 31 A. L. R. 1455; 1 R. C. L., p. 1042; 1 R. C. L. Supp., p. 314; 5 R. C. L. Supp., p. 59. 2. Alteration of Instruments, 2 C. J., Section 219; 3. Alteration of Instruments, 2 C. J., Sections 192, 194; 4. Appeal and Error, 4 C. J., Section 2869.

APPEAL from chancery court of Sunflower county.
HON. E. N. THOMAS, Chancellor.

Suit by Priscilla Scott and others against T. E. Perry and others. Bill dismissed, and complainants appeal. Affirmed.

*Everett & Forman,* for appellant.

Our contention is that the deed made to Walter Scott, the original of which is sent up by an order of the chancellor for the inspection of this court, vested the title in him; and immediately upon his death the title descended to his wife and three, then, living children; and the alteration of the deed thereafter did and could not affect the title which had vested in the heirs of Walter Scott immediately upon his death. If this contention be true, then it is useless to discuss any other question which arises in these transactions after the alteration of the deed, and in this brief we shall confine ourselves to the discussion of the alteration of this deed and its effect.

The question presented for determination is: Was this deed executed and delivered to Walter Scott and after his death altered by some other person? The proof clearly shows that this was done. Then, if that be true, under our statutes of descent and distribution, the title to this land passed to the complainants upon the death of their husband and father, Walter Scott. 8 R. C. L., par. 84, page 1028. See the many authorities given in support of the principle following the text, and especially: *Bacon* v. *Hooker,* 177 Mass. 335.

The alteration of the name of the grantee in a deed is a material alteration. *Hollis* v. *Harris,* 96 Ala. 288; *Abbott* v. *Abbott,* 189 Ill. 488; *Simpkins* v. *Windsor,* 21 Or. 382.

Mr. T. E. Perry, one of the defendants, who, at the time he testified, was claiming to be the owner of the land by sale thereof under a trust deed given by Priscilla Scott, undertakes to say that the deed, at the time he first saw it in 1915 or 1916, was unacknowledged and that he procured the acknowledgment thereto, thereby claiming that the deed was ineffectual prior to its acknowledgment to pass the title to Walter Scott. This we deny, and unless the defendants can avail themselves of that defense, this case must be reversed. The rule in this state is that an acknowledgment to an instrument

is not necessary to pass the title between the parties, but is only necessary to admit the instrument of record. Section 2294, Hemingway's Code. There are no subsequent purchasers concerned in this transaction, unless Mr. Perry terms himself a subsequent purchaser, and he knew of the alteration in the deed at the time he claims to have had it acknowledged, but the title passed whether the instrument was acknowledged or not. *Finch* v. *Tanner,* 2 Miss. 213.

Therefore, the title of Banks and Kyle passed to Walter Scott upon the delivery of the deed to him, whether it was properly acknowledged or not, and upon his death vested in his heirs, and the subsequent erasure and change of the beneficiary could not affect the title then vested in the heirs of Walter Scott.

But, we say that Perry's testimony is incompetent to impeach the acknowledgment which is written on this deed, and falls far short of furnishing the necessary evidence to show that the acknowledgment was not made on the day recited therein. In the first place, his testimony is flatly and positively contradicted by Priscilla Scott. In the second place, he does not testify that the acknowledgment was dated back to 1913, the date of the deed, but says that it was made sometime in 1915 or 1916, being very indefinite as to when the acknowledgment was made. *Mallory* v. *Walton,* 119 Miss. 396, 81 So. 113.

This case should be reversed and a decree entered for the appellants.

*Clark, Roberts & Hallam,* for appellees.

The only question presented for the determination of this court is: Was this deed executed and delivered to Walter Scott and after his death, altered by some other person? There can be no question but that the name "Priscilla Scott" was written into the deed after the name Walter Scott had originally been written in with the typewriter. There was no attempt on the face of the

deed to disguise the fact that a change in grantees had been made.

Counsel for appellants blandly state in their brief that prior to the making of the loans by Shelton Allen: ''There was stricken out of the original deed the name of Walter Scott wherever that name appeared, and there was written with a pen in this original deed the name of Priscilla Scott as the original purchaser;'' and that after the deed was changed, it was filed for record. The only evidence with reference to the alteration of the deed appears in the testimony of Priscilla Scott, and this testimony places the alteration at a date in the year following the year in which the instrument was recorded in the chancery clerk's office at Indianola, testifying that the alteration took place in M. B. Hilton's office in Cleveland, Mississippi, in the presence of T. E. Perry, M. B. Hilton and Priscilla Scott, M. B. Hilton making the change in the deed.

We do not think that the presumption is unwarranted that at the time of the closing of the deal for the sale of this land, Priscilla Scott appeared and demanded that she be made the grantee therein, the deeds having already been prepared; and upon the said Walter Scott acceding to this, the name Priscilla Scott was written therein as original grantee, and she was required to sign the notes before the deed was delivered.

The presumption is that the change took place *before execution,* as this presumption has not been overcome by any evidence worthy of the name of evidence. If the change took place after the execution and delivery of the deed, when did it take place and who made the change? The bill of complaint alleges that Charles Banks made the change. The evidence of Priscilla Scott is that Hilton made the change, but that he made this change in 1917, a year after the deed was placed on record, and the recorded instrument shows that Priscilla Scott was the grantee therein. In fact, the question of fact as to the alteration of the deed has been decided by the lower court against the contention of the party

charging the alteration; and as this is the decision of the court on the question of facts, it has the same binding force and effect as the verdict of the jury on the finding of facts, and the presumption stands. *Lauderdale* v. *Cole,* 71 So. 260, 2 C. J., pages 1275, 1276. There are numerous cases cited in Corpus Juris, and the same rule is held in federal courts. See *Rankin* v. *Tygard,* 196 Fed. 795. In the present case, there is no attempt to hide the alteration. It is bold and was intended, and this citation certainly applies to a case like the one at bar. *Brand* v. *Johnrowe,* 60 Mich. 210, 26 N. W. 883.

The presumption of the law is in favor of honesty and regularity. *James* v. *Holdam,* 142 Ky. 450, 134 S. W. 435. The bill of complaint charges fraud by Charles Banks, but no attempt is made to show that Charles Banks perpetrated a fraud by changing or altering the deed. As a matter of fact, positive proof is that Charles Banks did not change the deed and certainly could not be guilty of fraud for doing something which he did not do. The complainants failed to make out their case of fraud by a failure to prove all material allegations set forth in their bill of complaint with reference to fraud. In fact, the complainants in the court below, failed to show any fraud at all. 27 C. J., pages 40, 44; *Carter* v. *Eastman-Gardner Co.,* 95 Miss. 651; 8 R. C. L., par. 846, 1028; *Wicker* v. *Jones,* 159 N. C. 102, 74 S. E. 801, Ann. Cas. 1914 B 1083.

Surely, the appellants have not met the burden of explaining the alterations.

We respectfully submit that the finding of the lower court should be affirmed.

Argued orally by *Frank E. Everett,* for appellants.

Cook, J., delivered the opinion of the court.

The appellants Priscilla Scott and her minor children filed their bill of complaint in the chancery court of Sunflower county, whereby they sought to cancel certain deeds and deeds of trust as clouds upon their alleged title to certain lands therein described.

The record legal title of said land was vested in T. E. Perry, one of the appellees, subject to certain deeds of trust in favor of the Netherlands-American Mortgage Bank, the Guaranty Bank & Trust Company, and the Mound Bayou State Bank, in liquidation, and the bill of complaint charged that on December 20, 1913, W. P. Kyle and Charles Banks executed a warranty deed conveying the lands involved to Walter Scott, the husband of Priscilla Scott, and the father of the minor complainants, and that the said Walter Scott died on October 23, 1914, leaving the complainants as his sole surviving heirs at law. The bill further charged that, after the death of Walter Scott, Charles Banks, one of the grantors in the said deed, ascertaining the fact that the deed in question had not been filed for record in the chancery clerk's office, secured the deed and erased the name of Walter Scott as grantee therein, and inserted instead the name of Priscilla Scott as the grantee, and that, after such erasure and alteration, the deed was filed for record and properly recorded in the chancery clerk's office. The bill further charged that, after the death of the said Walter Scott, Charles Banks agreed to pay all taxes on the said land until the complainant, Priscilla Scott, had finished paying for the land; that the said Banks allowed the land to be sold for the taxes due for the year 1914; that at this tax sale the lands were purchased by W. W. Cox, and after the death of W. W. Cox were conveyed by his heirs at law to Shelton Allen, an employee of the said Charles Banks; and that the title was taken by Shelton Allen for the use and benefit of Charles Banks. The bill of complaint charges, and the proof shows, that, after the title of said land was taken in the name of Shelton Allen, deeds of trust were executed thereon in favor of

the Netherlands-American Mortgage Bank and the Guaranty Bank & Trust Company, and that shortly thereafter a deed was executed by Shelton Allen conveying the said lands to Priscilla Scott, one of the appellees herein, subject to the lien of the two deeds of trust mentioned above. Thereafter the said Priscilla Scott remained in possession of said lands, operating the same as her own, and executing deeds of trust thereon from time to time, one of which was to secure an indebtedness due the appellee T. E. Perry. This deed of trust was afterwards foreclosed, and at the foreclosure sale the said T. E. Perry became the purchaser of the lands.

The appellees filed answers to the bill of complaint, and upon the trial of the cause the original deed from W. P. Kyle and Charles Banks was introduced in evidence, and has been transmitted to this court. An inspection of this instrument shows that it was originally wholly typewritten, the name of Walter Scott appearing as the grantee in the original typewritten copy, and that wherever the name of Walter Scott appears in this typewritten instrument it has been scratched across with a pen, and the name of Priscilla Scott inserted with a pen.

The contention of the appellants is that the deed as executed and delivered conveyed the land to Walter Scott, and that the change in the name of the grantee was made after the delivery of the deed for the purpose of defrauding the complainants Priscilla Scott and her minor children, or, in other words, that the deed was altered after the delivery, and if so, upon the death of Walter Scott, the title to the land vested immediately in his heirs at law, who were Priscilla Scott and her two minor children.

The two minor children of Walter Scott, deceased, are entitled to recover their interest in this land, if in fact the deed was executed and delivered to Walter Scott as grantee. The chancellor's decree dismissing the bill is, in effect, a finding that the proof failed to show that the changes or interlineations in the deed were made after

delivery, and we are therefore presented with the question of whether the decree is manifestly wrong.

An erasure or interlineation appearing upon the face of an instrument is not an alteration in a legal sense, unless made after the delivery of the instrument, and whether a change or alteration in an instrument was made before or after its execution and delivery is a question of fact to be determined by the jury, or the chancellor, as the case may be. Except in the case of negotiable paper, which is recognized in this state as an exception to the rule, the general presumption is in favor of honesty and fair dealing in all transactions and against the imputation of fraud, and one who assails a deed on account of erasures or interlineations therein has the burden of showing that the erasures or interlineations were made after the execution of the deed. *Commercial & Railroad Bank* v. *Lum,* 7 How. 420; *Ellison* v. *M. & O. Railroad Co.,* 36 Miss. 572; *Wicker* v. *Jones,* 159 N. C. 102, 74 S. E. 801, 40 L. R. A. (N. S.) 69, Ann. Cas. 1914B, 1083; *James* v. *Holdam,* 142 Ky. 450, 134 S. W. 435; *Brand* v. *Johnrowe,* 60 Mich. 210, 26 N. W. 883; *Neil* v. *Case,* 25 Kan. 510, 37 Am. Rep. 259; 2 C. J. par. 194e, p. 1276, and authorities there cited.

In the case at bar the bill charges that the changes or interlineations in the deed were made by Charles Banks, one of the grantors therein, long after the execution and delivery of the deed, and that, after having so altered the deed, the said Charles Banks filed it for record. The only witness offered by the complainants to establish an alteration was Priscilla Scott, one of the complainants, and she testified repeatedly and emphatically that the interlineations in the deed were made by one M. B. Hilton, a notary public, when she made her final payment on the land in the year 1917. The signature of M. B. Hilton to another instrument was introduced in evidence, and was before the chancellor, for comparison of his handwriting with the writing of the party who made the interlineations in the deed, while the record of the

deed in the chancery clerk's office, which was introduced
in evidence, shows that it was filed for record on the 23d
day of October, 1916, and that the interlineations in this
deed had been made at that time. The appellant's testi-
mony as to the time when the interlineations were
made, which is in conflict with the averments of the
sworn bill, is thus by the record conclusively shown to
be untrue.

For the appellees, T. E. Perry testified that the deed
in question was turned over to him by the complainant
Priscilla Scott in the year 1916; that when he first saw
the deed the interlineations appeared therein; that the
deed had not been acknowledged when it was turned over
to him; that he secured the acknowledgment of the
grantors, and thereupon filed it for record. The certifi-
cate of acknowledgment on this deed bears the same date
as the instrument itself, and to that extent contradicts
the testimony of this witness as to the time the deed was
actually acknowledged. This witness also testified that
he was familiar with the handwriting of M. B. Hilton,
and that the interlineations appearing on the face of the
deed were not in his handwriting.

The chancellor saw and heard these witnesses, and
the various records were before him for inspection, and
it was his province to pass upon the conflicts and con-
tradictions in the testimony. The testimony is not at
all satisfying to us, and we are unable to say that the
chancellor was manifestly wrong, in holding that the
evidence failed to show that the interlineations in the
deed were made after its execution and delivery.

*Affirmed.*